UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04-CV-248

| | | |
|---|---|---|
| NICKEY GREGORY COMPANY, INC., et al. | ) ) | |
| Plaintiff, | ) ) | **O R D E R** |
| and | ) ) | |
| CAPITAL PRODUCE DISTRIBUTORS, INC., et al. | ) ) | |
| Intervening Plaintiff | ) ) | |
| v. | ) ) | |
| McGEE PRODUCE, INC., et al. | ) ) | |
| Defendant. | ) | |

THIS MATTER comes before the Court upon cross-motions by Plaintiff and Intervening Plaintiff for Reimbursement of Common Fund Attorneys' Fees. Both movants lay claim to money held in a trust established under the Perishable Agricultural Commodities Act ("PACA") as reimbursement of their costs from separate suits brought individually and benefitting all PACA claimants. A hearing was held on this matter on September 29, 2005, and the Court is now ready to rule on the motions. Intervening Plaintiff's Motion for Reimbursement of Common Fund Attorneys' Fees and Costs From Trust is GRANTED, Plaintiff's Cross-Motion for Reimbursement of Certain Fees and Costs From the Common Fund is GRANTED, and the remaining PACA trust assets are to be divided as set out below.

I.      **BACKGROUND & PROCEDURAL HISTORY**

On May 12, 2004, Intervening Plaintiff Capital Produce Distributors, Inc. ("Capital") entered into a consent judgment with Defendant McGee Produce, Inc. ("McGee") for payment of

funds owed by McGee under PACA, 7 U.S.C. §§ 499a-s (2000). Capital immediately began collecting from McGee's debtors, gathering a total of $62,479.28, comprising the bulk of the $70,832.26 ultimately collected and distributed in the final PACA trust. Capital eventually transferred this money  into an account entitled "McGee Produce PACA Trust Account" ("Capital PACA Account"). It did not do so, however, until it was made aware of the current action instituted by other PACA creditors.

On May 19, 2004, shortly after Capital began collecting funds but before those funds were transferred to the Capital PACA Account, Plaintiff Nickey Gregory Company, Inc. ("NGC") filed its own lawsuit against McGee seeking to preserve the rights of all claimants to the PACA trust funds. NGC sought and obtained a preliminary injunction against McGee and approval of its PACA Claims Procedure, as well as leave to apply for reimbursement of attorneys' fees incurred in the action. As part of the preliminary injunction granted to NGC on behalf of all PACA claimants, Capital was ordered to turn over all assets obtained from McGee to NGC for addition to the trust. Though Capital sought to amend this order to have the funds remain in the Capital PACA Account, the Court ultimately required it to turn over its collected funds to NGC.

In the wake of the preliminary injunction, NGC has implemented its claims procedure and administered all qualifying PACA claims accordingly. After disbursement of the PACA trust to all qualifying claimants, $7,801.25 remain in the fund for administrative costs. Capital filed the instant motion for reimbursement of a total of $15,790.32 in fees and costs from this fund, and NGC filed a cross-motion opposing this and requesting reimbursement from the fund of some of its costs, which totaled $31,951.57. Capital does not oppose NGC's motion for reimbursement, but seeks to have the remaining funds divided between itself and NGC rather

than disbursed to NGC alone.

## II.    DISCUSSION

Under the American Rule, parties must generally bear their own costs for an action, regardless of whether or not they prevail. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,421 U.S. 240, 247 (1975). It is well settled, however, that a litigant who creates or recovers a common fund for the benefit of persons other than himself is entitled to recover attorneys' fees from the common fund for any work that benefitted the group as a whole. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Thus, one party is not shouldered with all of the burden of undertaking an action that benefits other parties not before the court. Id.

Though there is no indication that Capital initially collected funds intending to benefit anyone other than itself, it is clear that when Capital learned of the other claimants, it did not siphon funds from the other potential claimants to satisfy its own debt, as NGC alleges, but rather fully cooperated with the NGC litigation and established a fund that all claimants could use for their recovery. Though Capital did not follow the prescribed PACA procedure, its cooperation ultimately benefitted all PACA claimants by collecting funds that might well have been lost otherwise and making those funds available to all claimants in the prescribed manner. As such, Capital's actions directly benefitted all PACA claimants and therefore it has met the minimum requirements for reimbursement of some of its attorney's fees under the common fund doctrine.

NGC, too, undertook actions to ensure the integrity of the PACA trust, taking a primary role in establishing and administering the trust to the benefit of all claimants. In fact, counsel for NGC specifically provided for other claimants in its proposed and ultimately adopted PACA Claims Procedure. For this effort, this Court granted NGC's counsel leave to seek the reimbursement it now requests. Even after leave to seek attorneys' fees was granted, NGC continued to undertake extensive

efforts to create a PACA Trust Chart setting out the method for pro rata distribution of the trust and administered the trust for the benefit of all claimants accordingly. As such, NGC has met the requirements for reimbursement of attorneys' fees under PACA to an extent that no other party has matched.

As both parties are fully qualified to receive reimbursement from the PACA trust and as funds have already been apportioned among trust claimants such that payment of attorneys' fees from the trust will not rob any other claimants of their rightful recovery, it only remains to divide the left over funds equitably between the two parties. There is little guidance as to how such a division might be carried out, however, so the Court must exercise its discretion to achieve a result that is both fair and reasonable considering the extent to which both parties benefitted the common fund, and through it, the PACA claimants not before the Court. Though Capital has certainly collected the lion's share of the debts that ultimately composed the PACA trust, it was NGC who undertook the most labor for the clear benefit of all claimants and who incurred the most costs in ensuring the integrity of the trust. As such, the majority of the remaining PACA funds are to be distributed to NGC. Capital should not be denied all recovery, however, as their actions ultimately preserved trust funds that might otherwise have dissipated.

**IT IS THEREFORE ORDERED** that both Plaintiff's motion and Intervening Plaintiff's motion are GRANTED. The money remaining in the PACA Trust is to be distributed as follows: $1,500 to Intervening Plaintiff Capital Produce Distributors, Inc., and the remainder, approximately $6,301.25,  to Plaintiff Nickey Gregory Company as reimbursement for costs and fees associated with compiling the PACA trust.

**Signed: October 4, 2005**

Graham C. Mullen
Chief United States District Judge